Good morning, Your Honors. Wesley Hodden on behalf of Speeds and Fiesta. I'd like to reserve five minutes of my time for rebuttal. This Court should reverse two-threshold constitutional rulings below because the District Court misapplied the law. I'd like to begin with our Substitute New Process Challenge, which the District Court dismissed at summary judgment based on a misreading of the Complete Prohibition cases. The most important of these cases is Dittman, where this Court held that there was a Complete Prohibition because an acupuncturist was required to write down his Social Security number in order to keep his license. This case is like Dittman because if we disobey Portland's laws, we do have our licenses revoked. There's no dispute that that would have happened. That's in the record 44-45. The District Court recognized that there was no dispute that our licenses would be revoked. That's in the record 17. Indeed, losing our licenses was compelled by the terms of Portland's laws. That's in the record 317-21.  I wouldn't, in the analysis, still then have to get over the threshold or abuse them. Not in this case, Your Honor, because the District Court didn't reach the merits or evaluate either side's evidence. This wasn't possible, for instance, for summary judgment. The city moved for summary judgment and we presented a dispute of fact about the rationality of these laws. From the Merrifield decision, we know that a plaintiff challenging a law's rationality has an opportunity to dispute that rationality with record evidence. Is that true on substantive due process? Merrifield was the evidence in that field, wasn't it? It was, Your Honor. Merrifield involves substantive due process claims and equal protection claims. There's a difference. You don't even look at the rationale. You just reinvent the rationale if there's an unsubstantive due process. Now, some courts have said that. We have said it in Denver. Yes, Your Honor, that's true, but that's not how we see this court and the U.S. Supreme Court performing rational basis analysis the most closely. Unsubstantive due process. Yes, Your Honor, I have a perfect example for you from the U.S. Supreme Court in Mania v. People of New York. The Supreme Court considered price fixing as minimum and maximum prices for milk during the Depression. And the court considered a substantive due process challenge to that law and went on for pages. I believe it's more than five pages of the U.S. reports discussing expert economic testimony, expert testimony from witnesses about the importance of milk to a healthy diet, and Merrifield does a similar factual analysis of the need for these laws. All we're asking for is an opportunity. But he argued that there was a rational basis, and you opposed that in summary judgment, so I'm not sure I'm understanding why you think you needed to file your own motion for this issue to be part of a summary judgment record that can be reviewed here. Well, perhaps we can continue, Your Honor, but our point is that the issues that are before the court are a reversal of summary judgment on complete prohibition grounds, which was legal error, and a dismissal of our complaint on our equal protection challenge, which was also legal error. If I could turn. But we often look at alternative grounds for affirmance, and this issue was briefed. So are you saying that there's additional evidence that you would submit that you haven't submitted, that you didn't submit an opposition to their motion? Potentially, Your Honor. On the equal protection claim, which we weren't allowed to develop in discovery or to bring to the court on the merits, because it was. Well, in what way is it not overlapping, though? I mean, you did oppose in summary judgment the substantive process, and both standards are rational basis, so what would you have said that you didn't have said? In two ways, Your Honor. In Merrifield, we know that the equal protection analysis is slightly different than the substantive due process analysis. The court explains that at some length when you look at the exemption under the law and whether or not that exemption is rationally related here, the exemption would be what taxi cabs get to do versus what stands get to do. Secondarily, Your Honor, we might find evidence about how we are, in fact, similarly situated to taxis, given the district court's concern about that issue. If I could turn. In order to convince us not to reach this issue, I think you have to say more than we might or we may. I mean, do you have evidence that you didn't get to submit that you plan to submit if we remanded this instead of just deciding the issues ourselves? I think you would present evidence on a similarly situated question, Your Honor. But again. What would that evidence look like? It would look like the testimony from the cab companies and the sedan companies and the regulators in the city of Portland about why these laws were passed, single out sedans, and they were. You already have that in the record, don't you? It's not in the record before this court, Your Honor, and that's. Well, why not? We have the summary judgment record before us, don't we? I don't have the complete summary judgment record, Your Honor, because the decisions below were focused on threshold constitutional issues. The excerpt record that we submitted focused on those threshold issues. Portland then asked for a ruling on the merits, but didn't submit any of the merits evidence that was considered below. So if the court reached the merits, it would have to follow the district court record to look at the party's competing evidence. If the court chooses to do that, Your Honor, which I'd like to turn to if I could, is it still reverse summary judgment? And that's because that evidence shows that Portland concedes that there's no public safety, health, or moral justification for this law that's at 365 to 64. Instead, the laws were, quote, put into place to protect the industry. That's at 185. Does, Your Honor, although other evidence was in that statement, although other evidence was clear that these laws were put into place to ensure that taxi companies were profitable and therefore viable and available to Portland citizens, if the rationale that was stated about making sure there's a range of services at different price points for the traveling public between the airport and the downtown, why isn't that a rational government interest? Well, Your Honor, that's one of three laws. That particular airport minimum is not rational because it serves only to advance a legitimate governmental purpose, namely protecting taxi industries from price competition. The summary judgment records showed us that taxis are viable without the minimum fare and the minimum wage. Portland has never increased the number of taxis. No taxi company has ever gone out of business. They're more profitable today, that is at the close of the summary judgment evidence, than they've ever been before. And scans have only decreased over time. There's no evidence in the record that these laws were truly necessary to protect the public, while there's ample evidence or at minimum a deceptive fact showing that these laws were designed specifically to make taxis richer and sedans poorer. But doesn't taxi regulation involve things like you have to pick up 24 hours a day, you have to pick up in any neighborhood, you have to take disabled people? There are all these things that I think cities view as benefits to the city. And isn't the exchange for allowing those regulations that you get some protectionism? Isn't that how taxi regulations always work? No, Your Honor. There's no law in the country like this law, which says, unlike the airport benefit fare judgment picture, that a sedan must charge $135. Well, it may not be exactly like this, but aren't there often laws that help give taxis some benefits in exchange for giving them these regulatory burdens? Perhaps, Your Honor, but that goes to the merits. Not the threshold constitutional issues that we were dismissed on. And this court shouldn't allow those threshold constitutional issues to have prevented us from having our evidence weighed on the merits in the first instance by the district court. As I was trying to explain, if the court does look at the district court record, you'll find that taxis are demonstrably viable in the city without these three laws. Indeed, as the court knows from the 20HA letters, Florida has repealed these laws, and yet... Does that make them not rational at the time, though? I mean, it may not be necessary, but necessary is a higher burden than rational, isn't it? That's a fair statement, Your Honor. But here the district court didn't arrive at those questions, and with respect to our equal protection claim, which I think is easy, even if the substantive due process issue is hard, we allege, do not complain, plausibly, that these laws were passed for the sole purpose of protectionism, that Portland's taxi companies were the source of the laws, which was borne out in discovery, and that they were specifically designed to increase taxi profits, again, borne out in discovery. We allege, as Poland later conceded, that these laws don't advance the public health, safety, or morals. There are unconstitutional policies under Merrifield, but again, the district court did not provide this court with a decision on that, and although the court can affirm on any grounds, it does so only when those grounds are supported by the record, Judge Friedland. And the record here does not include the party's summary judgment evidence because the district court didn't weigh in. So, turning to a few key decisions on the complete prohibition issue, it meant that this court held that there was a complete prohibition where someone was just required to write down their social security number. Here, my clients were ordered, in writing, to comply with the minimum fare or they would lose their licenses in three days' time. That is a complete prohibition. If we look at the Supreme Court's decision in Conn v. Gabbard, it helpfully points us to three prior Supreme Court decisions in which the court said there was a complete prohibition. One of those is Truax v. Rage, and in Truax, there was a cook working for a restaurant that was required to hire more native-born Americans if they wanted to employ the Austrian-born cook. That cook, the Supreme Court told us upon, was completely prohibited from pursuing his occupation. He could have gone and worked at another restaurant, or the business could have hired more native-born Americans. Okay, so let's assume we agree with you on that, and we reach the rational basis for you under such a due process. Your argument is you never got to put on the evidence to show that there is no rational basis whatsoever, so it fits within the very narrow exception to this extreme deference of American to identify an American as a minister. Are you going to do that? Not quite, Your Honor. I have three quick responses to that. We did present evidence that shows a disputed fact about rationality. It's just that the court would have to go looking for it in the district court. Is there any reason we can't do that? I mean, we have access to these certain moments in the district court records. Absolutely, Your Honor, you could. And you'd start with looking at the record at 420, where we list 26 exhibits in support of our response to Portland's motion for summary judgment. I could return to Judge Fischer's question. Your Honor, there's also the equal protection issue here. Why then do you have an equal protection? I'm talking about due process. Fair enough, Your Honor. The due process challenge, our argument is demonstrated at summary judgment at minimum a disputed fact about the rationality of these laws. If it did not, there's still a more challenging equal protection question, which wasn't even allowed to proceed from the face of the complaint. Before we move on, though, so maybe we should just remit this for enough history, it sounds like. Perhaps the court could. Certainly the court has the power to review the district court record or reverse, as we're requesting that the court does, on the two threshold constitutional issues and get a ruling from the district court. Perhaps that would bring us back here, I think, under the circumstances, Your Honor, where these laws have been repealed and the litigation is over a dollar. Us returning to this court is unlikely. We would certainly have to talk with our opponents and see what kind of resolution we could arrive at. You don't have a settlement with the district court? Well, that's what I'm suggesting, Your Honor. Before you get into that, we understand that the guest is out of business, right? Yes, one of two clients. Speeds is still around. I understand. Speeds is still around. Yes, Your Honor. Okay, try mediating this case before you get into argument here. Have you had mediation in this court? No, Your Honor, we were exempted from mediation in this court. Why was that? Because of the constitutional disputed issue. These special constitutional issues are bedeviling to the lower courts, and my clients would like two things clarified. First, that they were completely prohibited and had a right to bring this case into decision on the merits. And secondly, going forward, whether or not Portland has the power to reenact these laws, that's a well-recognized exception to mootness. Bernhardt v. County of Los Angeles is perhaps the best example there. So, I wrote a letter to the State of Texas. So, we'll continue through most of your rebuttal time. Would you like to save a bit, and we'll give you a couple minutes when you come back up? Yes, Your Honor. Thank you. Your Honors, may it please the Court. My name is Julia Glick. I represent the appellee, the City of Portland, in this matter. I first want to state that the City feels that the District Court's opinion was well-reasoned, sound, and the Court here could affirm on all of the bases stated in the District Court's opinion. Did I say that? That the Court could also affirm on any basis supported by the record. And we just want to clarify that, yes, the Court does have access to the whole record below. While the E.R. is submitted for convenience, that is available. We know that. We create the E.R. rules. You guys don't always follow them. I want to clarify a few points made by Mr. Hotto. First of all, we don't believe that the District Court completely misread this Court's past cases, both in wedges, ledges, also the Supreme Court in Kahn regarding complete prohibition. All of the cases that have addressed a liberty interest in following one's chosen profession have concerned preconditions that were necessary to obtain permits and operate in that field. They didn't concern regulations of the day-to-day activities that might have penalties that were monetary associated with it that might then cause a potential suspension that, if not paid and not adhered to, might eventually cause revocation, which is the situation we're dealing with here. Mr. Hotto repeatedly refers to a revocation being threatened, and he even cites places in the record. I would urge the judges, your honors, to look at those places in the record, and you'll see the word suspension, not revocation. And that was also what was in the letter that was sent to both the PSA and SPS. But if they didn't comply with these rules, their license would have been revoked. You're not denying that, are you? There's a set of procedures that are laid out in those regulations that follow notice, chance to respond, chance to repeal, that could eventually take place. That is, presuming they didn't pay the penalties associated with not revoking the penalties would have put them out of business. Do you have that? There's limited information about their financials in the record, but to the extent that I'm aware, I will take them into word. So there might have been some process that would have had to be followed, but essentially if they didn't follow these laws, they would have lost their license, it seems. Just because there's an appeal process doesn't mean they wouldn't eventually lose. This is one of the problems in this case, is that we're dealing in hypotheticals, and if you look at the requirements for wedges, ledges, and the like, the past fund process in a liberty interest case is that you show that there was a regulation that put you out of business, that took away, that actually deprived you of your ability to go forward. I thought that would be a sub-decree in the statute. No, there's a substantive due process. It's not another kind of challenge. A substantive due process is a very difficult claim to go ahead with and to establish, and liberty interest has been limited thus far in that way. How do you deal with true acts where the cook was not actually fired yet, that he faced the possibility of being fired, but if it had been some other cook, he would have been fired? Well, again, that was a law that was a precondition for employment. The law specifically stated this is when you can and cannot work, or this is essentially who can and cannot work in this business. And this is a regulation, this regulation that we have in place, it's like a lot of regulations, it carries financial penalties, it carries suspension penalties, but, you know, they could have gotten their car, they could have gotten an infinite number of parking tickets and not paid them, and it could have also potentially faced towing and other repercussions. So, for me, this is not a precondition. If they were suspended, they couldn't use their cars either, could they? Well, then maybe that's a substantive due process excuse, but to me that seems like the kind of reasonable regulation that the Supreme Court has talked about as being acceptable. Let's say we disagree with you about this. Okay. So we need to either revamp or get to the merits. Why should we agree? What should we say on the merits if we get to the merits? Well, what I would say is that rational basis has been argued thoroughly below, but in order to prevail on rational basis, they would have to establish that this was totally arbitrary. And contrary to their reply brief, and what's stated in their briefing, they bear that burden. They have to show that there was no other rational reason other than protectionism for this to go forward. There is a lot of in-the-ways. Is that right? Actually, some of these regulations have been in place as far back as the 90s. They were part of what the board had as administrative regulations, and that's in the record. For example, premium rates has been in the requirement. Okay, so what rates? Premium rates, luxury for hard vehicles. One of the questions I have, it says that it had to charge 135% of the prevailing tax rate. How would they know that? Well, it was calculated. It would be calculated based on what the quote itself says, is a taxi's maximum fare, which essentially all taxis charge, and that's in the record. Basically, they have a fare associated that they have to run on their meter per waiting time. Somebody said it said, well, it varies at any time of the day, and if you go on the taxi's website, you can figure it out. You say there's a fixed number. There's a fixed number associated with a given trip. In this case, it would have been a calculation of the given minutes that would have been available, and it would have been a calculation of the time. In this particular case, without a doubt, because this was such a low fare that they were offering in the Groupon, without a doubt it would have been below premium rate. I understand that they are too aware of it physically. If I'm sitting there trying to comply on an afternoon pickup at 2 o'clock, and I want to make sure I charge 135% of the prevailing taxi rate, you say there is a prevailing taxi rate as part of the statute? Yes, and, again, you could look at the statute of what's required, and you could look it up on their website. But I would also submit that that's not a problem for these companies, and they've said that in the record. They have always charged on a regular day-to-day basis, after commotions, well over the prevailing rate of taxis. That's their needs in the market. 135%? Yes. Okay. And where's the $50 minimum charge to the airport? Does it have a minimum charge or one hour of wait time? Yes. What is your? So, ultimately, these are part of a larger scheme of regulations. Taxis are subject to a great number of regulations, and they're listed out in the brief. They have to have 24-hour dispatch. 20% of their fleet has to be handicapped accessible. They have to have a camera in their car for security. They have to paint their cars based on the colors of their fleet. They have to have 33, I believe it's 33, cars in their fleet minimum. There's a whole bunch of very costly regulations. And essentially what the city did was carve out a space for non-taxis to operate without having to meet these regulations, which are far more costly than the three regulations at issue here. However, the city also didn't want to create a shadow industry that didn't have to follow those regulations but could operate exactly like taxis could. That would essentially have been an exception as well as the rule. Your Honors, I'm not prepared to comment on that. Is it a replication of these rules that will undermine your argument that this is part of taxi regulation? Well, since you first come up with these rules, we're not, like I stated, repeal. These rules were completely overhauled. And they look very different now than they did when this case emerged. And that had to do with a lot of factors. And one of the factors was the emergence of new types of transportation. And the prior rules didn't really anticipate or exist during a time of, weren't created during a time of Uber and Lyft in the way that they're now operating. So the new rules are very different. But you still have taxis in Portland? Yes, we still have taxis in Portland. And they survive, they're surviving without regulations like this? The regulations are different. And not many of the regulations are in taxis that were made. I can't comment at length on those regulations, but I'm happy to brief that for you if you'd like. Your Honors, if you have no further questions, we just, oh. In addition, I just wanted to point out that while Plano stated that taxis are doing great and have never gone out of business, they have declared bankruptcy in the past, and that is in the record while they've been taken over by other companies. The other point I would like to make is that was part of the goal of the regulations. The goal of the regulations was to keep many different industries with different goals and different niches in the market and business at the same time. Equal protection is about parties that are singularly situated being treated equally. And if you look at virtually every equal protection case, it's about people asking to be treated the same as parties they serve are similarly situated. That is not what Plano is doing here. They're asking to be treated differently. They don't want to do 24-hour dispatch. They don't want to serve 20% of their vehicles with handicapped accessibility. They don't want to take people at the grocery store on short trips on short notice. They don't necessarily want to have to serve every part of the city of Portland like the regulations require taxis to do or to pick up drunks on the corner because they can't go home. Those are all things that we require taxis to do and we monitor taxis to do, and they don't have to do those things, but they do have to do these three regulations. And that is in the interest of sustaining a viable market and making sure that the taxi regulations win something. If there aren't any further questions, we will rest the matter here. Thank you. Thank you, Nancy. We'll continue in two minutes for a vote. Thank you, Judge Friedman. In the record at 245, the city told us in writing, I quote, failure to pay the penalties results in revocation of the permits. We were told in the record at 244 we had three days to comply or our permits would be, quote, canceled. This wasn't an issue of suspension, Your Honors. If you look at the record, it was an issue of revocation. All of the cases are not about preconditions to licensure. Not only would that create a strange constitutional rule that gave only licensed professions the right to bring substantive due process challenges, but it also defies the PDK Labs decision from the D.C. District Court where the plaintiff in a substantive due process case was importing pharmaceuticals that the DEA would give them a waiver for. It would only compose 75% of that business's operations, and yet the court recognized that that was a complete prohibition under Ton. Ton is about a temporary impediment. A lawyer was saying my right to practice law was infringed by being searched on my way into the courthouse, just like every lawyer in this room was searched on the way into this courthouse. The Supreme Court said that's not a complete prohibition. Go and look at the Truax case. Go and look at Dent or Swear. Those are- I think we have that in the briefs that you addressed at the last point, that unequal protection, you don't want to be treated as a business deal for law. Well, that goes to the merits, Your Honor. It doesn't go to the similarly situated question. We know that courts like Norlinger v. Vaughn in this fourth Arizona Dream Act Coalition case look at the challenged law to determine whether parties are similarly situated. But they look at the relevant laws, and why isn't it relevant that taxis have a whole set of regulations that include burdensome things as well as some things to try to help them balance out the burdens with benefits? It is relevant, Judge Friedland, but it's relevant to the rational basis question of the similarly situated question. If it were true that a legislature could, by passing other laws that defined two classes differently, prevent equal protection analysis, then the legislature could define themselves out of the federal court's review of equal protection claims against them. That's never been the rule. So, for example, the Arizona Dream Act Coalition, it would have had to come out differently because there the legislature had defined the two classes differently under other laws. But the court said, no, what matters is how you're treated under the challenged law. Your Honor, I see my time has expired. If you have no further questions. Thank you, counsel, on both sides. These are very helpful arguments. The case is submitted. Yeah, good arguments. Thank you. That's an interesting case. How do you take it? I don't know. I took the airport. I see. That's a good argument. Yes, I'm sorry. We will take a five-minute recess before the next case.
judges: Fisher, Friedland, Mahan